JS 44 (Rev 06/17)

18 cv 2779

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet   (SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM)

## I. (a) PLAINTIFFS

Michael Pribble

**DEFENDANTS** 18 2779
Southwest Airlines, Co , General Electric Company, Safran SA d/b/a
Safran Aircraft Engines; CFM International, Inc.

(b) County of Residence of First Listed Plaintiff
(EXCEPT IN U S PLAINTIFF CASES)

County of Residence of First Listed Defendant    USA
(IN U S PLAINTIFF CASES ONLY)

NOTE    IN LAND CONDEMNATION CASES  USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

(c) Attorneys (Firm Name Address, and Telephone Number)
Katzman, Lampert & Stoll, Bradley Stoll, 121 North Wayne Ave., Suite
205, Wayne, PA 19087, (610) 686-9686

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an  X  in One Box Only)

- ❏ 1  U S Government
  Plaintiff
- ❏ 3  Federal Question
  (U S Government Not a Party)
- ❏ 2  U S Government
  Defendant
- ☒ 4  Diversity
  (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an  X  in One Box for Plaintiff
and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ☒ 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT (Place an 'X' in One Box Only)

Click here for  Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ☒ 315 Airplane Product Liability | Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & | ❏ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers Liability | ❏ 368 Asbestos Personal | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 340 Marine | Injury Product Liability | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | | | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❏ 893 Environmental Matters |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement Income Security Act | ❏ 870 Taxes (U S  Plaintiff or Defendant) | ❏ 895 Freedom of Information Act |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS – Third Party 26 USC 7609 | ❏ 896 Arbitration |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | |
| ❏ 245 Tort Product Liability | ❏ 445 Amer  w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | ❏ 950 Constitutionality of State Statutes |
| ❏ 290 All Other Real Property | ❏ 446 Amer  w/Disabilities - Other | **Other:** ❏ 540 Mandamus & Other | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 550 Civil Rights ❏ 555 Prison Condition ❏ 560 Civil Detainee - Conditions of Confinement | ❏ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an 'X' in One Box Only)

- ☒ 1  Original Proceeding
- ❏ 2  Removed from State Court
- ❏ 3  Remanded from Appellate Court
- ❏ 4  Reinstated or Reopened
- ❏ 5  Transferred from Another District (specify)
- ❏ 6  Multidistrict Litigation - Transfer
- ❏ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U S Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)
28 U.S.C  1332

Brief description of cause
Personal Injury sustained aboard commercial flight

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F R C  P

**DEMAND $**

CHECK YES only if demanded in complaint
JURY DEMAND: ☒ Yes  ❏ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)
JUDGE  Honorable Gerald McHugh     DOCKET NUMBER  18-1769

DATE
06/28/2018

SIGNATURE OF ATTORNEY OF RECORD
Bradley Stoll

JUN 29 2018

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG JUDGE



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**18   2779**

**DESIGNATION FORM**

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___ Chandler, OK.  c/o counsel at 121 N. Wayne Ave, Suit 205, Wanye, PA 19087

Address of Defendant: ___ Southwest Airlines, 2702 Love Field Drive, Dallas, TX 75235

Place of Accident, Incident or Transaction: ___ Southwest Airlines Flight 1380 mishap over Pennsylvania

---

*RELATED CASE, IF ANY:*

Case Number: ___ 18-1769 ___ Judge: ___ Geradd A. McHugh ___ Date Terminated: ___

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 07/02/2018 ___ *Bradly Stoll* ___ 89635

Attorney-at-Law / Pro Se Plaintiff ___ Attorney I.D. # (if applicable)

---

CIVIL: (Place a √ in one category only)

**A.   *Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
(Please specify): ___

**B.   *Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☑ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury (Please specify): ___
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
(Please specify): ___

---

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___ Bradley Stoll ___, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 07/02/2018 ___ *Bradly Stoll* ___ 89635

Attorney-at-Law / Pro Se Plaintiff ___ Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

JUN 29 2018

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Michael Pribble | : | CIVIL ACTION |
| v. | : | **18   2779** |
| Southwest Airlines, Co. et al | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus   Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management   Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   (✓)

(f) Standard Management   Cases that do not fall into any one of the other tracks.   ( )

| | | |
|---|---|---|
| 6/28/18 | Bradley Stoll | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (610) 686-9686 | (610) 686-9687 | bstoll@klm-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JUN 29 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL PRIBBLE,                                    Case No:
*Plaintiff*

                                                   Complaint Filed:

vs.

SOUTHWEST AIRLINES CO.;                    CIVIL COMPLAINT
GENERAL ELECTRIC COMPANY;
SAFRAN S.A. d/b/a
SAFRAN AICRAFT ENGINES;
CFM INTERNATIONAL, INC.;
*Defendants*

## CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, Michael Pribble, by and through undersigned counsel, and for his Complaint against Defendants, jointly and severally, states as follows:

## PARTIES AND JURISDICTIONAL ALLEGATIONS COMMON TO ALL COUNTS

1.      Plaintiff, Michael Pribble is a citizen and resident of the State of Oklahoma.

2.      At all times material hereto, Defendant, Southwest Airlines Co., (hereafter "Southwest") is a corporation existing under the laws of the state of Texas and operates as a common carrier airline with its principle place of business believed and therefore averred to be located at 2702 Love Field Drive, Dallas, TX 75235 and is registered to conduct business in the Commonwealth of Pennsylvania and/or may be served within the Commonwealth of Pennsylvania at Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, PA 17110.

3.      Defendant General Electric Company (hereafter individually referred to as "GE") is a corporation existing under the laws of the state of New York with its principle place of business believed and therefore averred to be located at 41 Farnsworth Street, Boston, MA 02210. GE does business individually, through a partnership, agency, subsidiary d/b/a GE Aviation, and/or joint venture as CFM International. The registered agent for GE is Business Filings Incorporated, 108

1

West 13th Street, Wilmington, DE 19801. The registered agent for GE is Business Filings Incorporated, 108 West 13th Street, Wilmington, DE 19801.

4.     Defendant Safran S.A. (hereafter individually referred to as "Safran") is a foreign corporation existing under the laws of the country of France which does business through its division Safran Aircraft Engines and is believed and therefore averred to be located at 2 Boulevard Du General Martial-Valin, Paris, 75742, France.  Safran does business individually, through a partnership, agency, and/or joint venture as CFM International.  Service of process may be had pursuant to The Hague Service Convention and Fed. R. Civ. P. 4(h)(2) and 4(f).

5.     At all times material hereto, Defendant CFM International, Inc. (hereafter "CFM") is a corporation existing under the laws of the state of Delaware with its principle place of business believed and therefore averred to be located at 22091 West Royal Lane, Irving, Dallas County, Texas 75063 and does business individually, through a partnership, agency, and/or joint venture as CFM International. CFM maintains a registered agent at The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801.

6.     GE, Safran, and CFM are collectively referred to as "the CFM Defendants" when referencing the joint venture, agency, and/or partnership between these entities for the purpose of manufacturing, selling, supporting, and designing commercial aircraft engines.

7.     All conditions precedent to maintaining this cause of action have accrued.  The amount of controversy exceeds the minimum jurisdictional amount exclusive of costs and interest, and jurisdiction is otherwise proper before this Court as more fully alleged below.

8.     Jurisdiction is founded, in whole or in part, upon diversity of citizenship, 28 U.S.C. § 1332, in that (a) the amount in controversy exceeds $75,000.00, exclusive of costs and interest; (b) at all times material hereto, Plaintiff was a resident of the state of Oklahoma; and (c) at all

times material hereto, the Defendants were all incorporated in a state other than Oklahoma and have their principle place in a state other than Oklahoma.

9.     All defendants caused a tort, portions thereof, and/or consequences of a tort to occur in the Commonwealth of Pennsylvania.

10.     Venue is appropriate in the Eastern District of Pennsylvania because the accident complained of occurred here and one or all of these defendants conduct substantial regular business in this District:

    a.     Defendant Southwest operates regular commercial flights from its assigned terminal located in Philadelphia County at the Philadelphia International Airport;

    b.     All defendants regularly and systematically conduct business, solicit business, and earn substantial revenue from business conducted within this district;

    c.     In addition, events giving rise to the cause of action occurred in Philadelphia County.

11.     All defendants are subject to personal jurisdiction in the Commonwealth of Pennsylvania:

    a.     They committed torts within or outside of the Commonwealth which caused harm within the Commonwealth;

    b.     Each defendant maintains sufficient minimum contacts with the Commonwealth of Pennsylvania by systematically, regularly, and continuously conducting business within the Commonwealth of Pennsylvania by availing themselves to the business opportunities here, conducting regularly scheduled flights and associated services from Pennsylvania, providing services to maintain CFM model engines and assure the continuing airworthiness of these engines in Pennsylvania;

3

      c.      Plaintiff's cause of action arises from or is related to these contacts;

      d.      Exercising personal jurisdiction over these defendants is consistent with due process considerations and is fair.

## BACKGROUND OF THE CAUSE OF ACTION

12.     Defendant Southwest is a commercial air carrier and owes the highest duty of care to its passengers to ensure safe carriage aboard those flights that it operates.

13.     Defendants CFM, GE, and Safran, doing business as CFM International, manufactured, designed, and sold the CFM56-7B engines that are installed in certain Boeing 737-700 commercial aircraft.

14.     It is of the utmost importance that commercial air carriers as well as the manufacturers of commercial aircraft engines adhere to the highest standards of care to ensure that passengers are not subjected to any dangers which could induce an in-flight emergency or worse, an air disaster.

15.     Members of the public who engage in commercial air travel place the ultimate trust, and do in fact entrust their lives and safety, to entities such as Southwest and the CFM Defendants and rely upon their good will, representations of dedications to safety, and apparent expertise over the airworthiness of their products and propriety of their services.

16.     These defendants, however, unforgivably breached that trust as they each were aware of a dangerous condition existing in the CFM56-7B engines which power those Boeing 737-700 aircraft that Southwest operate in its fleet of commercial aircraft.

17.     This knowledge, either in whole or in part along with additional reasons to be developed in discovery, arises from the in-flight uncontained engine failure that befell a Southwest Airlines Boeing 737-700 scheduled as Southwest Flight 3472 on August 27, 2016 when one the

CFM56-7B engine fan blades failed, destroyed the engine compartment, and caused engine debris to strike and damage the aircraft fuselage.

18.     The uncontained engine failure that befell Flight 3472 was precipitated by a fatigue failure of the fan blade of the CFM56-7B engine.

19.     Subsequent to Flight 3472, Southwest and the CFM Defendants failed to take reasonable measures and failed to identify and correct the root cause of the metal fatigue failure of the fan blade and the uncontained nature of the failure to ensure that a future uncontained fan blade failure would not occur despite being on clear notice that such a failure could and did result in a projectile striking the aircraft fuselage.

20.     Instead, the CFM Defendants recommended inspections of the fan blades based on hours in service, however, upon information and belief Southwest did not follow, accelerate, nor properly perform these inspections on the Boeing 737-700 aircraft in its fleet including the subject aircraft.

21.     The fan blade inspections, however, are not the cure to the root cause of the problem, but rather a band aid masking a dangerous metallurgical, structural, casting, forging, or metallic treatment-based design or manufacturing flaw, or other design or manufacturing defect rendering the fan blades incapable of withstanding the vibratory and/or thermal stresses encountered in normal operational service.

22.     Despite this threat to the safety of Southwest's fleet of 737-700 aircraft, despite the snail's pace investigation into the root cause of Flight 3472's fan blade failure, these defendants provided no warnings to the flying public, provided no warnings to its actual customers, and in particular, provided no warnings to Plaintiff Michael Pribble.

23.     Instead of providing necessary warnings or otherwise removing dangerous engines from service, Southwest continued to operate commercial air carrier services despite knowing that its Boeing 737-300 aircraft, including the subject aircraft, were operating with an unresolved and undisclosed unsafe condition.

24.     On April 17, 2018, Mr. Pribble was a fare-paying passenger aboard Southwest Airlines Flight 1380 which was a scheduled flight originating at New York-LaGuardia Airport.

25.     Ms. Pribble relied on the representations, warranties of the defendants, and entrusted his safety to Southwest and the CFM Defendants as he was completely unaware of the dangerous condition plaguing the aircraft's engines; a risk that never would have been accepted had it been disclosed to him.

26.     Approximately 20 minutes after Flight 1380 took off and was flying in the airspace over the Commonwealth of Pennsylvania, the left CFM56-7B engine suffered a catastrophic uncontained failure of a fan blade causing unexpected and sudden pitch and/or bank movements of the aircraft and a resulting controlled rapid emergency decent.

27.     Debris from the uncontained engine failure struck the aircraft's fuselage and shattered a passenger's window causing rapid depressurization.

28.     The engine failure and breach of the window caused rapid depressurization, severe vibrations, and the cabin environment to become a whirlwind of airflow and airborne debris which struck Mr. Pribble and obstructed his breathing and at all times material hereto, Mr. Pribble was within the zone of danger, experienced physical impact from the gyrations and abrupt movements of the aircraft and the rapid depressurization and environmental conditions within the cabin, suffered physical injury due to the rapid depressurization, was aware that one passenger had been

partially ejected from the aircraft and had been severely or fatally injured, and was otherwise placed in immediate risk of physical harm.

29.     Flight 1380 was diverted to Philadelphia International Airport where it landed and passengers disembarked only to be encountered by a team of people actually or ostensibly working on behalf of Southwest whose questions and treatment of passengers revealed a failure to account for the shock that these innocent victims, including Mr. Pribble were experiencing.

30.     The individuals actually, or ostensibly, working on behalf of Southwest, failed to use the appropriate care of Mr. Pribble.

31.     Photographs taken of the failed left engine and published by news reports reveals a missing fan blade with reports that the fracture surfaces showed signs of metal fatigue.

32.     Plaintiff's investigation thus far supports a finding that the blade failure which occurred on Southwest Flight 1380 was identical and/or substantially similar to the fan blade failure which occurred on Southwest Flight 3472.

33.     As a direct and proximate cause of the traumatic events that befell Flight 1380 Plaintiff Michael Pribble suffered and continues to suffer severe personal injuries including but not limited to physical injury to his ears and inner ear structures, vertigo, post-traumatic stress disorder, anxiety, emotional distress, depression, personal injuries to his body including respiratory injuries, the physical manifestations of the emotional and mental trauma he experienced and continues to suffer, and seeks recovery for all damages including but not limited to, damages for loss of earnings, financial damages, mental, emotional, and physical pain and suffering, loss of enjoyment of life, loss of ability to perform and experience the usual activities of life, loss of earning capacity, past and future medical care and expenses together with damages for physical pain and suffering, and emotional anguish, terror and fright.  Plaintiff further seeks all other

7

available compensatory damages, as well as punitive damages against the Defendants and each of them for their reckless misconduct and conscious disregard for his safety, health, life and wellbeing.

**COUNT I:  Negligence**
**Plaintiff vs. Southwest**

34.      Paragraphs 1 through 33 are incorporated by reference as if fully set forth.

35.      As a common carrier and/or commercial airline carrier, Southwest owed a duty of care to its passengers, including Mr. Pribble to ensure that the aircraft and engines that it uses in its fleet are airworthy, that all maintenance and inspections necessary to ensure the continuing airworthiness of its fleet is performed in a professional and workmanlike manner, owed a duty to discontinue services and/or warn its passengers of any dangers associated with its aircraft so that they make informed judgments about purchasing services from Southwest or other carriers, and owed duties to perform any duties that it assumed in a professional and reasonably prudent manner in the context of the circumstances presented.

36.      As an air carrier, Southwest also owed regulatory duties to ensure that the aircraft that it uses in its fleet are airworthy, that all maintenance and inspections necessary to ensure the continuing airworthiness of its fleet is performed in a professional and workmanlike manner, and owed a duty to discontinue services and/or warn its passengers of any dangers associated with its aircraft so that they make informed judgments about purchasing services from Southwest or other carriers; the breaches of such regulatory duties constitute negligence per se.

37.      Defendant Southwest breached the foregoing duties of care owed to Plaintiff Michael Pribble as follows:

a.      Failing to properly inspect the subject engine for signs of impending catastrophic failure of its internal components;

8

b.      Failing to properly inspect the engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

c.      Failing to properly maintain the subject engine to prevent catastrophic failure of its internal components;

d.      Failing to properly maintain the engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

e.      Failing to properly inspect the subject engine pre-flight so as to identify internal engine components exhibiting signs of impending failure;

f.      Failing to properly inspect the subject engine's containment features pre-flight to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

g.      Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components;

h.      Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure in the subject engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

i.      Failing to take appropriate and reasonable corrective measures after the in-flight emergency that befell Flight 3472 to ensure that similar uncontained engine failures would not occur;

9

j.      Failing to take appropriate and reasonable measures to ensure that the aircraft engines used in its fleet, including the subject CFM56-7B, were free of design and/or manufacturing defects rendering it unsafe for flight;

k.      Failing to accelerate the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components in light of the gravity of the resulting harm;

l.      Failing to take the necessary precautionary measures to remove the subject engine from service, which had an unsafe condition that could cause an in-flight uncontained engine failure;

m.      Failing to ground those aircraft equipped with engines, such as the subject engine, whose product service history showed malfunctions which had not been remedied, whose root cause had not been addressed, to prevent further catastrophe;

n.      Failing to warn Plaintiff that the subject aircraft and its engine contained an unsafe condition and/or design or manufacturing defects that had not been rectified after a prior malfunction approximately a year before;

o.      Failing to fulfill regulatory duties to report product defects, service problems, or other matters that affect the safety of flight to regulatory authorities;

p.      Failing to properly train its team of employees and/or agents responsible to contend with passengers who were in shock after experiencing an in-flight emergency and exacerbating his trauma and shock;

q.      Failing to act reasonably by harassing Plaintiff through placing recorded telephone calls and exacerbating Plaintiff's post-traumatic stress;

r.      Failing to act reasonably for reasons to be developed in discovery of this action.

38.     As a direct and proximate cause of the forgoing breaches by Defendant Southwest of duties it owed to Plaintiff, the subject CFM56-7B engine installed on the subject Boeing 737-700 aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the defendant in his favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

## COUNT II: Breach of Contract and Warranties
### Plaintiff vs. Southwest

39.     Paragraphs 1 through 38 are incorporated by reference as if fully set forth.

40.     Defendant Southwest is a commercial air carrier and offers its services to the public for a profit.  This defendant holds itself out to the public as a company that a has a commitment to safety and has adopted the highest safety standards to ensure its passenger's safety.

41.     Plaintiff contracted with Defendant Southwest as a fare paying passenger for safe carriage and transport from his origination to his destination.

42.     Included within that contract was Southwest's obligation to provide an aircraft that was in a condition safe for flight.

43.     Plaintiff relied upon the representations, good will, warranties, and contractual obligations that Southwest promised it would perform.

44.     Southwest breached its contractual obligations and warranties in the following respects:

11

a.      Failing to properly inspect the subject engine for signs of impending catastrophic failure of its internal components;

b.      Failing to properly inspect the engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

c.      Failing to properly maintain the subject engine to prevent catastrophic failure of its internal components;

d.      Failing to properly maintain the engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

e.      Failing to properly inspect the subject engine pre-flight so as to identify internal engine components exhibiting signs of impending failure;

f.      Failing to properly inspect the subject engine's containment features pre-flight to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

g.      Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components;

h.      Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure in the subject engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

        i.      Failing to take appropriate and reasonable corrective measures after the in-flight emergency that befell Flight 3472 to ensure that such events did not repeat themselves;

        j.      Failing to take appropriate and reasonable measures to ensure that the aircraft it used in its fleet, including the subject Boeing 737-700, were free of design and/or manufacturing defects rendering it unsafe for flight;

        k.      Failing to accelerate the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components in light of the gravity of the resulting harm;

        l.      Failing to take the necessary precautionary measures to remove the subject engine from service, which had an unsafe condition that could cause an in-flight uncontained engine failure;

        m.      Failing to ground those aircraft equipped with engines, such as the subject engine, whose product service history showed malfunctions which had not been remedied, whose root cause had not been addressed, to prevent further potential catastrophe;

        n.      Failing to warn plaintiff that the subject aircraft and its engine contained serious design defects that had not been rectified after a prior malfunction approximately a year before;

        o.      Failing to fulfill regulatory duties to report product defects, service problems, or other matters that affect the safety of flight to regulatory authorities;

        p.      Failing to act reasonably for reasons to be developed in discovery of this action.

45.     As a direct and proximate cause of the forgoing breaches by Defendant Southwest of duties it owed to Plaintiff, and here reasonable reliance thereon, the subject CFM56-7B engine installed on the subject aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the defendant in his favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

**COUNT III: Negligence**
**Plaintiff vs. GE, Safran, and CFM**

46.     Paragraphs 1 through 45 are incorporated by reference as if fully set forth.

47.     Those defendants collectively referred to the CFM Defendants are the manufacturer, seller, and designer of commercial aircraft engines including the subject CFM56-7B.  These defendants collectively hold themselves and their joint venture out to the public as a company that a has a commitment to safety and has adopted the highest safety standards to ensure the safety of the users of its products.   As such, these defendants owed Plaintiff duties of care to ensure that its products were not dangerous, unsafe, unairworthy, or defective and to warn of any dangers that would affect the safety of flight and put users of its products in danger.

48.     In addition to duties imposed by common law, the CFM Defendants are subject to regulatory duties, the breaches of which constitute negligence per se.

49.     The CFM Defendants breached its duties owed to Plaintiff as follows:

a.     Failing to properly test, design, construct, build, or specify the engine assemblies to ensure that they possess all of the necessary features to be capable of containing an internal engine malfunction such as the one experienced on Flight 1380;

14

b.      Failing to properly perform the necessary analysis evaluation, failure modes and effects analysis, or other accepted engineering study to assess the safety of the subject engine assembly to contain a failure of the internal components of the subject engine;

c.      Failing to issue proper maintenance instructions for mechanics to ensure the continuing airworthiness of the engine assembly so that it was capable of containing a failure of the internal components of the subject engine;

d.      Failing to issue proper inspection procedures for mechanics to ensure the continuing airworthiness of the engine assembly so that it was capable of containing a failure of the internal components of the subject engine;

e       Failing to warn users of its product that the engine assembly suffered from design and/or manufacturing defects rendering it unsafe for flight because it was incapable of containing an internal engine malfunction such as the one experienced on Flight 1380;

f.      Failing to properly test, design, construct, build, or specify test the internal engine components of its aircraft's engines to ensure that they are capable of withstanding the stresses imparted to them to prevent a premature failure;

g.      Failing to properly perform the necessary analysis evaluation, failure modes and effects analysis, or other accepted engineering study to assess the safety of the internal engine components used in the CFM56-7B engine such as its fan blades;

h.      Failing to issue proper maintenance instructions for mechanics to ensure the continuing airworthiness of the internal engine components used in the CFM56-7B engine such as its fan blades;

i.      Failing to issue proper inspection procedures for mechanics to ensure the continuing airworthiness of the internal engine components used in the CFM56-7B engine such as its fan blades;

j.      Failing to warn users of its product that the CFM56-7B internal engine components such as its fan blades suffered from design and/or manufacturing defects rendering them unsafe for flight because they were incapable of withstanding the stresses encountered under normal engine operating conditions;

k.      Failing to properly audit, monitor, evaluate, and ensure that vendors who manufacture, forge, and/or sell, component parts installed in its aircraft, such as the internal components of the CFM56-7B engine which malfunctioned during Flight 1380, to ensure that the products they produce are safe, airworthy, met specifications, and did not contain any features which would cause an engine malfunction;

l.      Failing to properly make the necessary design changes and or decisions to discontinue or postpone service of those engines which potentially and/or in fact did possess inherent design defects in their engines;

m.      Failing to provide the warnings necessary to make the subject engines safe for use in commercial aircraft operation;

n.      Failing to act reasonably, prudently, and/or in accordance with the standard of care in connection with the support, design, sale, manufacture, of the subject engine;

o.      Failing to act reasonably, prudently, and/or in accordance with the standard of care for reasons to be developed in discovery of this action.

50.     As a direct and proximate cause of the forgoing breaches by the CFM Defendants of duties it owed to Plaintiff, the subject CFM56-7B engine installed on the subject aircraft

experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the defendants in his favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

**COUNT IV: Strict Liability**
**Plaintiff vs. GE, Safran, and CFM**

51.     Paragraphs 1 through 50 are incorporated by reference as if fully set forth.

52.     The CFM Defendants are a manufacturer, seller, and designer and/or through partnership, joint venture, agency or otherwise are a manufacturer, seller, and designer of commercial aircraft including the subject aircraft.

53.     The CFM Defendants did manufacture, sell, and design the subject aircraft.

54.     The subject CFM56-7B engine was defectively designed in the following respects:

a.     The engine assembly was structurally deficient and otherwise lacked the necessary safety features to ensure that any malfunction of the engine, including the type experienced during Flight 1380, would be contained within the compartment;

b.     Engine assembly was failed to possess the necessary safety features to contain any internal malfunction of the engine because it was not manufactured according to specification or otherwise improperly constructed;

c.     The maintenance and inspection instructions concerning the CFM56-7B engine were defective in that they failed to include all procedures and steps necessary to prevent an uncontained engine failure;

17

d.     The fan blades used in the subject engine were defectively designed and/or manufactured as they were forged improperly, casted improperly, and/or improperly treated or hardened rendering them unfit for use in the subject aircraft;

e.     The fan blades used in the subject engine were defectively designed and/or manufactured as they were structurally incapable of withstanding the vibratory, thermal, or other stresses encountered in normal operation of the engine;

f.     The maintenance and inspection instructions concerning the engine internal components such as fan blades were defective in that they failed to include all procedures and steps necessary to prevent an engine failure or detect an impending engine failure such as the one experienced in Flight 1380;

g.     The engine was defectively designed because they lacked all necessary warnings to make them safe for use in commercial aircraft operation;

h.     The engine was defectively designed because it contained unsafe conditions and features rendering it dangerous, susceptible to uncontained failure, susceptible to fatigue fractures of the fan blades all of which were reasonably likely to occur between inspection schedules;

i.     The engine was defectively designed for reasons that will be developed in the discovery of this matter.

55.     The risks associated with the foregoing defects were so severe that they could cause certain death in a commercial airline disaster that they outweighed any benefit to cost, production, ease of manufacture, or otherwise.

56.     The nature of the design and/or manufacturing defects were so profound that no ordinary user of the product would accept them.

18

57.     As a direct and proximate cause of the forgoing design defects, the subject CFM56-7b engine installed on the subject aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the defendants in Plaintiff's favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

### COUNT V: Breach of Express and Implied Warranties
### Plaintiff vs. GE, Safran, and CFM

58.     Paragraphs 1 through 57 are incorporated by reference as if fully set forth.

59.     The CFM Defendants are a manufacturer, seller, and designer and/or through partnership, joint venture, agency or otherwise are a manufacturer, seller, and designer of commercial aircraft including the subject aircraft.

60.     These defendants did manufacture, sell, and design the subject aircraft.

61.     The CFM Defendants warranted expressly and/or impliedly that the aircraft engines were free of material defects, that they were merchantable and fit for the particular purpose intended, that they were airworthy, that were safe for flight, and fit for use in commercial aircraft, and that these warranties ran to Plaintiff as an intended and/or third-party beneficiary.

62.     The CFM Defendants described and advertised its products including the subject model engine. Such descriptions and advertisements included, but were not limited to advertising brochures, instructions, manuals, specification sheets, web-based information and other products, statements and representations. These descriptions, representations and affirmations concerning the goods and services of Defendant resulted in express warranties that the goods were as described and sold for their intended use.

63.     These descriptions, representations, affirmations and express warranties became part of the basis of the bargain of their sale and these warranties ran to Plaintiff upon which Plaintiffs relied.

64.     Plaintiff was a member of the class to whom the warranties were intended to protect.

65.     The CFM Defendants breached the express and implied warranties because:

a.     The engine assembly was structurally deficient and otherwise lacked the necessary safety features to ensure that any malfunction of the engine, including the type experienced during Flight 1380, would be contained within the compartment;

b.      The engine assembly was failed to possess the necessary safety features to contain any internal malfunction of the engine because it was not manufactured according to specification or otherwise improperly constructed;

c.     The maintenance and inspection instructions concerning the CFM56-7B engine were defective in that they failed to include all procedures and steps necessary to prevent an uncontained engine failure;

d.     The fan blades used in the subject engine were defectively designed and/or manufactured as they were forged improperly, casted improperly, and/or improperly treated or hardened rendering them unfit for use in the subject aircraft;

e.     The fan blades used in the subject engine were defectively designed and/or manufactured as they were structurally incapable of withstanding the vibratory, thermal, or other stresses encountered in normal operation of the engine;

f.     The maintenance and inspection instructions concerning the engine internal components such as fan blades were defective in that they failed to include all procedures

20

and steps necessary to prevent an engine failure or detect an impending engine failure such as the one experienced in Flight 1380;

g.      The engine was defectively designed because they lacked all necessary warnings to make them safe for use in commercial aircraft operation;

h.      The engine was defectively designed for reasons that will be developed in the discovery of this matter.

66.      As a direct and proximate cause of the forgoing breaches, the subject CFM56-7b engine installed on the subject aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the defendants in his favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

**COUNT VI: Willful, Wanton, and Outrageous Misconduct**
**Plaintiff vs. Southwest, GE, Safran, and CFM**

67.      Paragraphs 1 through 66 are incorporated by reference as if fully set forth.

68.      The conduct giving rise to the breaches of duties owed by Southwest and the CFM Defendants described above, are especially egregious and aggravated because they were committed with knowledge that the subject aircraft engine had a dangerous design defect.

69.      This knowledge is detailed in paragraphs 13 through 24 above.  These facts show that the defendants, collectively and or individually, had actual knowledge of an unsafe condition in the engine that had not been remedied since the last known failure only a year before Flight 1380.

70.      Despite knowing of the dangerous condition of the subject aircraft's engine, the defendants risked the lives of more than a hundred innocent passengers, including Plaintiff, by

21

electing not to discontinue service with the use of aircraft equipped with these engines or otherwise electing not to inform passengers of the nature of the existing dangerous condition.

71.     The Defendants knew that the evaluation of the failed engine components of Flight 3472 was moving at a slow pace and that even though more than a year had passed a root cause of the failure had not been corrected.

72.     Rather than protect the safety of Plaintiff and those who also were fare paying customers, the defendants' misconduct placed profits and business over the safety of its customers and continued to operate these engines even though there was confirmation that an unsafe condition existed which had not been corrected since the failure that befell the 2016 incident involving Flight 3472.

73.     Given the gravity of harm that could befall passengers in a commercial aircraft which would be a certain catastrophe such as what befell Flight 1380 on April 17, 2018, these defendants acted with malice, recklessness, and with disregard for the rights of others including Plaintiff.

74.     As a direct and proximate cause of the forgoing misconduct, the subject CFM56-7b engine experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against the defendants in his favor for the full amount permitted by law including compensatory damages and punitive damages in light of the facts, law and evidence, and also seeks any and all interest, costs and attorney's fees allowable.

## DEMAND FOR TRIAL BY JURY

Plaintiff requests a jury trial to all issues so triable.

Respectfully submitted this **28th** day of June, 2018.

ATTORNEYS FOR PLAINTIFF

Bradley J. Stoll, Esq.
KATZMAN, LAMPERT, & STOLL
121 North Wayne Ave. #205
Wayne, PA 19087
Phone:  (610) 686-9686
Fax:     (610) 686-9687
bstoll@klm-law.com

23